UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY JONES,

          Plaintiff,                       Case No. 2:14-cv-14213
                                           Judge Arthur J. Tarnow
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 15) AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 18)

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court DENY Plaintiff's motion for summary

judgment, GRANT Defendant's motion for summary judgment, and AFFIRM the

Commissioner's decision.

**II.     REPORT**

      Plaintiff, Terry Jones, brings this action under 42 U.S.C. §§ 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for supplemental security income (SSI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 15), the

Commissioner's cross motion for summary judgment (DE 18) and the administrative record (DE 11).

### A.   Background

Plaintiff filed his application for SSI benefits on September 29, 2011, alleging that he has been disabled since August 1, 2010, at age 48.  R. at 112-118. Plaintiff alleges disability as a result of high blood pressure, diabetes, emotional, bipolar syndrome, dysfunctional left arm, mental conditions and a heart condition. R. at 129-137.  Plaintiff's application was denied on December 13, 2011.  R. at 49-59, 60, 61-64.

Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  R. at 67, 68-74.  ALJ Oksana Xenos held a hearing on March 22, 2013, at which Plaintiff was represented by counsel and Vocational Expert (VE) Harry Cynowa testified.  R. at 27-48.  On May 24, 2013, ALJ Xenos determined that Plaintiff was not disabled within the meaning of the Social Security Act.  R. at 10-25.

On July 22, 2013, Plaintiff requested review of the hearing decision.  R. at 6, 7-9.  On September 5, 2014, the Appeals Council denied Plaintiff's request for review.  R. at 1-3.  Thus, ALJ Xenos's decision became the Commissioner's final decision.

2

Plaintiff then timely commenced the instant action on November 2, 2014.

DE 1.

### B.    Plaintiff's Medical History

In this case, Plaintiff alleges that he has been disabled since August 1, 2010.

*See* R. at 112-118.  Plaintiff's medical records span the period from January 8,

2010 to February 9, 2013.  R. at 178-276 (Exhibits 1F-9F).

### 1.    Physical History

On July 10, 2010, Plaintiff was examined by family practitioner George C.

Costea, D.O.  (R. at 181-183.)  Although Dr. Costea indicated that there were some

limitations on lifting/carrying, standing/walking and sitting, and some limitations

on use of extremities for repetitive action, he <u>also</u> indicated there were no physical

limitations. (R. at 182.)  Also, Dr. Costea assessed mental limitations in

comprehension, memory, sustained concentration and social interaction.  (R. at

183.)

Plaintiff was seen for an internal medicine evaluation on December 2, 2011.

(R. at 210-216.)  Internist Bina Shaw, M.D. concluded that Plaintiff "can work

eight hours a day.  The patient can sit, stand, walk, bend minimally and lift at least

10-15 pounds of weight without difficulty.  He should avoid heights and

machinery."  R. at 212.

3

It appears that Plaintiff's primary physician(s) were located at Midwest Medical Center – Dearborn, where he treated for an extended period.  (R. at 228-276 [Ex. 9F]).  For example, Plaintiff was treated by Daoud Faraj, M.D. on May 2, 2012 (R. at 232-234), Robert Rubin, D.P.M. on May 11, 2012 (R. at 235-240), Andrew Marcus, M.D. on June 14, 2012 (R. at 243-244), Jose DeSousa, M.D. on June 28, 2012, who performed an electrodiagnostic evaluation (R. at 245-246), Dr. Faraj on July 20, 2012 (R. at 247-253), Dr. Marcus on July 26, 2012, who ordered a brain MRI (R. at 254-257), Dr. Faraj on August 29, 2012 (R. at 258-261), Dr. Marcus on September 20, 2012 (R. 262, 264), and Dr. Marcus on September 27, 2011 or 2012, who sent him for an orthopedic MRI which occurred on October 5, 2012 (R. at 265-266, 267-269).  It appears that Plaintiff was a no show on October 15, 2012 and cancelled November 15, 2012.  (R. at 269.)  However, Plaintiff was treated by Dr. Marcus on November 1, 2012 (R. at 270-272) and by Dr. Faraj on January 29, 2013 (R. at 273-274).  The detail of these records will be discussed, as necessary, below.

## 2.   Psychiatric History

On April 27, 2011, Plaintiff underwent an annual psychiatric evaluation, which revealed major depressive disorder, recurrent, severe with psychotic features, as well as polysubstance dependence, which was in remission.  At that time, Dr. John Head observed:  "the patient demonstrated good grooming,

timeliness, orientation times four, poor eye contact, normal speech, intact

judgment, logical and coherent thought process, average intelligence, no obsessive

or compulsive thought, no psychosis evidence, fair insight, . . . calm behavior with

social smile, pleasant or happy interaction and euthymic mood.  . . . The patient

was receptive to advice." (R. at 203.)  At the conclusion of the examination,

Plaintiff received prescriptions for Luvox and Geodon.  (R. at 202-203.)  A May

24, 2011 psycho-social assessment revealed the same major depressive disorder

and polysubstance dependence diagnoses.  (R. at 184.)

Plaintiff's August 24, 2011 Individualized Plan of Service (IPOS) listed

goals included stabilizing physical health, applying for SDA benefits, applying for

SSI benefits, understanding the impact of psychotropic medication, establishing

and maintaining abstinence, while increasing knowledge of the disease and the

process of recovery.  (R. at 186-200.)  A medical progress note of the same date

indicated the same major depressive disorder and polysubstance diagnoses listed

above and psychotropic medication prescriptions for Luvox and Geodon.  (R. at

201.)

On November 15, 2011, in assessing Plaintiff's mental RFC, Dyan

Hampton-Aytch, Ph.D. concluded that Plaintiff appeared capable of sustained

work activity.  (R. at 53-57.)  Thereafter, on June 13, 2012, Plaintiff underwent a

psychiatric evaluation and mental status examination by Someswara N. Navuluri,

M.D., which revealed a diagnosis of depressive disorder.  He was prescribed

Lexapro, Klonopin and Seroquel.  (R. at 218-219.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

Plaintiff Terry Jones testified at the March 22, 2013 hearing.  (R. at 34-44.)

Plaintiff stated he is right-handed and weighs 260 pounds.  (R. at 34.)  He lives by

himself.  Plaintiff has a GED.  (R. at 35.)  He grocery shops about once per month

and goes to church.  He does not drive.  (R. at 38.)  He gets around with help from

different people or by catching a bus.  He does his own laundry.  (R. at 39.)

Plaintiff fixes his own meals, most of which are bologna sandwiches, and a typical

day includes getting up, sitting around, drinking a cup of coffee and viewing

television programs.  (R. at 38.)  He also reads, often from the Bible.  (R. at 39.)

He usually gets five hours of sleep at night and occasionally naps during the day.

(R. at 41.)  He takes Ibuprofen, high blood pressure medication, water pills and

aspirin, and the side effects include constipation and insomnia.  (R. at 44.)

At the time of the hearing, he was not working, having last worked in 2008

and 2009 part-time as a painter.  (R. at 35-36.)  Plaintiff stopped working, because

"since then my health has deteriorated."  (R. at 36.)  Plaintiff testified that he has

mental stress.  (R. at 36.)  According to Plaintiff, he has been "trying to deal with

society" since his release from incarceration.  (R. at 37.)  He has trouble

remembering things.  (R. at 41-42.)  On a typical day, he is "stressed out."  (R. at 42.)  He explained that he does not have great family support.  Although the welfare payments have been very helpful, the assistance he received for rent has expired, and he is "about to get put out."  (R. at 42-43.)[1]  The building in which he stays has bed bugs, "which are eating me alive."  (R. at 43.)  When he calls to ask for things, no one wants to help him.  (R. at 42.)  Sometimes, he feels like giving up, and has made suicide attempts.  (R. at 42-43.)

Plaintiff also testified about the effects of his physical limitations on his ability to work.  (R. at 36.)  Among other things, Plaintiff mentioned problems with his feet and numbness in his right side.  (R. at 36-37.)  He also had surgery on his left arm and experiences no feeling "up the left side."  He does not really have a limit on how long he can sit in one spot.  He can sometimes stand for at least 20 minutes.  He is limited to walking "[a] block or so, two blocks."  (R. at 40.)  Sometimes, he can lift at least 20 pounds.  Plaintiff also testified that his diabetes has been out of control.  (R. at 41.)  Additionally, Plaintiff testified that he was treated for the possibility of fluid on his heart.  (R. at 44.)  Plaintiff stated that, sometimes, it hurts to get up, to walk, to think; he just wants "to lie there and do nothing."  (R. at 43.)

---

[1] At the time of his September 29, 2011 SSI application, Plaintiff's rent was subsidized by COTS (Coalition on Temporary Shelter) in Detroit, MI.  (R. at 113.)

Plaintiff testified that he was connected with "MRS," which this Court assumes to be the Michigan Department of Health & Human Services (MDHHS) Michigan Rehabilitation Services,[2] but also explained he is not currently doing anything to find a job.  (R. at 40.)

## 2.   Vocational Expert Testimony

VE Cynowa also testified.  (R. at 44-48.)  Upon examination by the ALJ, the VE stated that a person of Plaintiff's age, education and past work experience who was limited to unskilled, simple, repetitive, self-paced work with minimal changes in the work setting and only occasional contact with the general public, co-workers and supervisors would not be capable of performing his past work as a painter (semi-skilled, medium).  (R. at 45.)  However, such a person could perform unskilled work at the light exertional level, including a small products assembler, a hand packager and a visual inspector checker.  (R. at 46.)  Moreover, the VE testified that if there were frequent episodes of pain and a combination of other impairments which resulted in the individual being off task up to 20 percent of the workday on a regular and continuing basis, there would be no competitive, full-time employment.  (R. at 46.)

---

[2] This assumption is buttressed by Plaintiff's admission that he is "currently indigent and is receiving services through the Michigan Department of Human Services."  DE 15 at 8.

2:14-cv-14213-AJT-APP   Doc # 19   Filed 11/23/15   Pg 9 of 34   Pg ID 371

**D.      The Administrative Decision**[3]

ALJ Xenos rendered her decision on May 24, 2013.  R. at 10-25.  At Step 1, she found that Plaintiff has not engaged in substantial gainful activity since September 29, 2011, the date of his application.  R. at 15.

At Step 2, the ALJ found that Plaintiff has the severe impairments of diabetes, diabetic polyneuropathy, mild to moderate right shoulder impingement, hypertension, obesity, and mood disorder.  R. at 15-17.

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  R. at 17-18.

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?
2.      Does the claimant suffer from one or more severe impairments?
3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations:  simple, repetitive, self-paced, unskilled work that involves minimal changes in work setting, and only occasional contact with coworkers, supervisors and the general public.  R. at 18-21.  Moreover, the ALJ found that Plaintiff is unable to perform any past relevant work.  R. at 21.

At Step 5, having considered Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  R. at 21-22.

### E.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

   Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.     Analysis

In his motion for summary judgment, Plaintiff sets forth two statements of error, asserting that:  (1) substantial evidence on the record demonstrates that controlling weight was not given to the objective medical evidence; and (2) the RFC determination by the ALJ did not accurately portray Mr. Jones's physical and mental impairments and nonexertional limitations.  DE 15 at 5, 11-14, 15-17.

The Commissioner opposes Plaintiff's motion, asserting that:  (i) the ALJ properly considered Dr. Costea's opinion;[4] (ii) the ALJ properly considered Plaintiff's impairments in combination, and whether he was capable of sustained work; (iii) the ALJ adequately explained the RFC; (iv) the ALJ adequately considered Plaintiff's diabetes, neuropathy, shoulder condition, hypertension, obesity, and mood disorder, and assessed corresponding RFC limitations; (v) the ALJ properly considered Plaintiff's credibility; and (vi) the ALJ properly considered Plaintiff's shoulder impairment.  DE 18 at 12-20.

I will address each argument raised in turn.

### 1.     Substantial evidence supports the ALJ's assignment of weight to the opinion evidence.

---

[4] The spelling of this doctor's name is unclear.  It is spelled as "Costed" and "Coster" in the ALJ's decision.  (*See* R. at 15, 20.)  Plaintiff also refers to his physician as "Coster."  (DE 15 at 11-13.)  However, upon examining the particular medical record at issue, the Court believes the correct spelling is George C. Costea, D.O.  (*See* R. at 183; www.whitepages.com.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

13

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[5] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the

---

[5] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted).  The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

In his motion, Plaintiff argues that "the ALJ failed to give controlling weight to any objective medical evidence substituting her own findings for that of the medical doctors."  (DE 15 at 8.)  According to Plaintiff,

> The ALJ does not give any rationale for her decision, only conclusory statements. There is no discussion of the objective medical evidence in the decision, no discussion of the factual basis for the decision, and not a single discussion in the decision of special factors such as medication side effects, fatigue, neuropathy and pain, which the Plaintiff suffers from.

15

Specifically, Plaintiff claims it was legal error for the ALJ to reject "the treating physician medical opinion of Dr. Coste[a], D.O., for that of a non-examining consultative examiner [Dr. Hampton-Aytch], who never saw or examined the Plaintiff."  (DE 15 at 11, R. at 20-21.)

### a.  The ALJ's various assignments of weight.

Within her Step 4 discussion, the ALJ assigned weight to various opinions. (R. at 20-21.)  For example, the ALJ assigned "little weight" to the July 10, 2010 State of Michigan DHS Medical Examination Report of George C. Costea, D.O. (R. at 181-183); "some weight" to the December 2, 2011 evaluation by Bina Shaw, M.D. (R. at 210-216); and "significant weight" to the November 15, 2011 assessment of Dyan Hampton-Aytch, Ph.D.  (R. at 53-57).  Also, the ALJ did not find persuasive or give meaningful weight to social worker Frederick Carr's October 18, 2011 third party function report (R. at 141-148) or January 30, 2013 correspondence (R. at 220).

As discussed below, the ALJ appropriately assigned weight to these assessments:

### i.  George C. Costea, D.O.[6] (Treating Physician)

---

[6] The Commissioner asserts that Dr. Costea is not a treating source.  (DE 18 at 13.) This seems to be true, as the record appears to contain only one of his opinions. (R. at 181-183.)  "Generally, we give more weight to opinions from your *treating sources*, since these sources are likely to be the medical professionals most able to

The ALJ considered the July 10, 2010 medical examination report of George

C. Costea, D.O. during Step 2 and in the RFC finding portion of Step 4.  (R. at 15,

20.) [7]  Plaintiff argues that the ALJ did not explain why Costea's opinion is not

well supported or is contradicted by other evidence and accuses the ALJ of

"cherry-picking" the medical records instead of considering Plaintiff's longitudinal

treatment. (DE 15 at 12).[8]  In sum, Plaintiff claims that the ALJ "gave no adequate

or competent reasoning for the weight assigned to treating doctor, Dr. Coste[a][.]"

(DE 15 at 13.)

I disagree.  The ALJ adequately explained her consideration of Dr. Costea's

opinion.  At the outset, the ALJ notes the date of Dr. Costea's report, which

provide a detailed, longitudinal picture of your medical impairment(s) and may
bring a unique perspective to the medical evidence that cannot be obtained from
the objective medical findings alone or from *reports of individual examinations*,
such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527
(emphasis added).

[7] As the Commissioner notes, the ALJ placed her treatment record discussion
within her Step 2 assessment, instead of in her Step 4 assessment.  (*Compare* R. at
15-17, R. at 18-21; *see also*, DE 18 at 15.)  For example, at Step 2, the ALJ
expressly considered the October 5, 2010 electrocardiogram (EKG).  (R. at 15,
178.)

[8] The argument that the ALJ "cherry-picked" the record is frequently made and
seldom successful, because "the same process can be described more neutrally as
weighing the evidence." *White v. Commissioner,* 572 F.3d 272, 284 (6th Cir.2009).
The narrow scope of judicial review of the Commissioner's final administrative
decision does not include re-weighing evidence, deciding questions of credibility,
or substituting the court's judgment for that of the ALJ. *See Ulman v.
Commissioner,* 693 F.3d 709, 713 (6th Cir.2012); *Bass v. McMahon,* 499 F.3d 506,
509 (6th Cir.2007).

slightly pre-dates August 1, 2010, Plaintiff's alleged date of onset.  (*See* R. at 15, 112.)  Moreover, the ALJ correctly found Dr. Costea's assessment of Plaintiff's physical limitations (lifting / standing / walking / sitting / using upper limbs) internally inconsistent with his own clinical narrative.  (R. at 20.)  Additionally, the ALJ found Dr. Costea's assessment of Plaintiff's mental limitations (comprehension, memory and sustained concentration) inconsistent with subsequent evaluations completed by mental health clinicians.  (R. at 20, 181-183.)  Even if the ALJ did not more specifically list these inconsistencies, some of them are obvious.  For example, it is internally inconsistent to check "no limitations" under "Physical Limitations," but then check boxes which indicate that Plaintiff has limitations on lifting/carrying.  It is also inconsistent to check both "Sit less than 6 hours in an 8-hour workday" ***and*** "Sit about 6 hours in an 8-hour workday[.]"  (R. at 182.)   Plaintiff broadly claims that the ALJ did not explain her statements that Dr. Costea's opinions "are not well supported," and "are contradicted by other substantial evidence."  (R. at 20, DE 15 at 12.)  Nonetheless, "the burden of proof lies with the claimant at steps one through four of the process . . . ."  *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  Here, Plaintiff has not satisfied this burden, failing to specifically identify the "other substantial evidence" which allegedly should have required the ALJ to reach a different conclusion.  (R. at 15, DE 15 at 12.)  At any rate, the ALJ's conclusion

is well supported by substantial evidence, and thus is not subject to reversal under the standard of review here.

Plaintiff's allegations that the ALJ did not give controlling weight to or discuss the objective medical evidence are particularly void of support. (*See*, *i.e.*, DE 15 at 5, 8, 11, 15). Plaintiff contends that "the medical opinions of Dr. Coste[a] are corroborated by the objective medical evidence." (DE 15 at 13.) Yet, Plaintiff himself does not provide a citation to the so-called objective support, with the exception of the questionable assessment by Dr. Costea. (R. at 181-183, DE 15 at 11-17, 11.)

### ii.   Bina Shaw, M.D. (Internal Medicine Evaluation)

Although Plaintiff contends that the ALJ does not point to substantial record evidence to dispute Dr. Costea's assessment (DE 15 at 12) or did not give "good reasons" for discounting his opinion, as required by *Wilson* (DE 15 at 13), this is untrue. For example, the ALJ gave "some weight" to the December 2, 2011 internal medicine evaluation performed by internist Bina Shaw, M.D., specifically the conclusions that Plaintiff could work full-time and could lift at least 10-15 pounds without difficulty, explaining: "Shaw's appraisal, although somewhat vague, is not at odds with the [RFC] adopted." (R. at 20, 210-212.)

In her assessment, Dr. Shaw specifically stated: ". . . the patient can work eight hours a day. The patient can sit, stand, walk, bend minimally and lift at least

10-15 pounds of weight without difficulty.  He should avoid heights and

machinery."  (R. at 212.)  This is not inconsistent with an RFC for "light work,"

which involves:

> . . . *lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.* Even though the weight lifted may be very little, a job is in this category when it *requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(b), 20 C.F.R. § 416.967(b) (emphasis added).

### iii.    Dyan Hampton-Aytch, Ph.D. (DDS Psychologist)

At Step 4, the ALJ considered the administrative findings of fact made by

non-examining DDS (Disability Determination Services) Psychologist Dr.

Hampton-Aytch, Ph.D.  In giving Dr. Hampton-Aytch's findings "significant

weight," the ALJ specifically noted Dr. Hampton-Aytch's determinations that

Plaintiff "has a 'severe' mental impairment, but retained the ability to perform

simple unskilled tasks on a sustained basis, that did not require frequent

interpersonal interactions."  (R. at 20-21.)

In her assessment, Dr. Hampton-Aytch noted that Plaintiff had the severe

impairment of affective disorders.  (R. at 53.)  At the same time, she also

determined that Plaintiff "appears capable of sustained work activity." (R. at 54, 57.) In addition, within her mental RFC assessment, she found Plaintiff "not significantly limited" in areas involving simple instructions, simple work-related decisions and simple questions. (R. at 55-56.) Moreover, she found Plaintiff "moderately limited" in his ability to interact appropriately with the general public. (R. at 56.) These assessments lend support to the ALJ's RFC limitations of "simple, repetitive, self-paced, unskilled work that involves minimal changes in work setting, and only occasional contact with coworkers, supervisors and the general public." (R. at 18.)

Furthermore, to the extent Plaintiff takes issue with the ALJ's assignment of "little weight" to Dr. Costea's medical examination report while affording "significant weight" to nonexamining DDS psychologist Dyan Hampton-Aytch, Ph.D. (R. at 20-21, 181-183, 53-57; DE 15 at 11), "[a]ny record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012).

### b.     Conclusion

Plaintiff unsuccessfully argues that the ALJ's "failure to give specific reasons and explain precisely how those reasons affected the weight accorded the opinions . . ." DE 15 at 13. Instead, the Court should conclude that the ALJ did

give "good reasons" as contemplated by 20 C.F.R. § 416.927(d)(2). Specifically, the ALJ pointed out several internal inconsistencies within Dr. Costea's *own* record, and further that Dr. Costea's opinion was inconsistent with other evidence in the record. In doing so, the ALJ gave good and sufficiently specific reasons for the diminished weight given to Dr. Costea's opinion and explained her reasons for the weight assigned to the opinions of Dr. Shaw and Dr. Hampton-Aytch.

### 2. Plaintiff has not demonstrated that the ALJ omitted any significant physical or mental limitations from her RFC finding.

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(3), 416.927(e). "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days

22

a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, 1 (July 2, 1996). In other words:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id*. at 7 (footnote omitted).

In his motion, Plaintiff generally argues that "the finding that Plaintiff has severe physical and mental impairments, along with non-exertional impairments such as pain and medication side effects[,] were not factored into the residual functional capacity assessment (RFC)." (DE 15 at 8.) In other words, Plaintiff argues, "[t]he RFC determination by the ALJ did not accurately portray Mr. Jones' physical and mental impairments and nonexertional limitations." In support of this argument, Plaintiff asserts that, "The ALJ listed no objective medical evidence nor does the ALJ offer any analysis or insight through the decision into her residual functional capacity (RFC) determination." (DE 15 at 15.)

23

In this regard, Plaintiff takes issue with what he claims to be *missing* from the ALJ's decision; in other words, Plaintiff claims the ALJ did not comply with SSR 96-8p's narrative discussion requirements, such as evaluating "whether based on claimant's combined physical and mental limitations [he] is capable of a competitive work schedule . . . ." (*See* DE 15 at 14, 17.)  Plaintiff further claims "[t]here is no rationale in the decision whatsoever to describe how Plaintiff can perform so much despite the severe impairments as determined by the ALJ in her decision . . . ." (DE 15 at 16.)

### a.    Physical impairments

At Step II, the ALJ found that Plaintiff had the severe physical impairments of diabetes, diabetic polyneuropathy, mild to moderate right shoulder impingement, hypertension and obesity.  (R. at 15.)  Referring to his application for SSI benefits, Plaintiff contends his physical impairments include chronic pain syndrome and heart problems.  (R. at 112-118, DE 15 at 8.)

Plaintiff's argument that the ALJ's RFC determination did not accurately portray Plaintiff's physical impairments is unavailing.  (*See* DE 15 at 5, 15.)  For example, Plaintiff alleges that "Judge Xenos does not factor in her RFC determination her own previous conclusion that Plaintiff has the severe impairments of diabetes; diabetic polyneuropathy; mild to moderate right shoulder

impingement; hypertension; obesity . . . ."  (DE 15 at 15.)  It is Plaintiff's position

that the ALJ did not include each of the limitations she found in the RFC and

discuss how such limitations affect Plaintiff's ability to perform sustained work.

For example, Plaintiff claims there are no limitations in the RFC related to the right

shoulder impingement or diabetic polyneuropathy.  (DE 15 at 16.)

     However, as Defendant contends, the restriction to light work accounts for

Plaintiff's physical limitations, including his shoulder impairment.  (R. at 18, DE

18 at 20; *see also*, DE 18 at 16.).  While the lifting/carrying provisions of "light

work" are not consistent with Dr. Costea's determination that Plaintiff could only

occasionally lift/carry less than 10 pounds (R. at 182), they are consistent with his

own contrary record of "no limitations" and with Dr. Shaw's assessment that

Plaintiff can lift at least 10-15 pounds of weight without difficulty (R. at 182, 212).

Moreover, the ALJ addressed Plaintiff's shoulder at Step 2 and Step 4; in doing so,

she referred to Dr. Marcus's September 20, 2012 notes that "[t]here is limitation in

movement of the right shoulder[,]" (R. at 262) and apparently to the October 5,

2012 MRI of the right shoulder (R. at 267-268), which noted only "mild to

moderate rotator cuff impingement," (R. at 17, 19; DE 18 at 20.)

     As to neuropathy, the Commissioner points to several of Dr. Marcus's

letters, which the ALJ discussed at Step 2:

- a June 14, 2012 letter which noted, "Sensation is decreased to pinprick distally in the feet and hands. There is decreased pinprick in the distribution of the median nerve[;]" (R. at 243),

- a July 26, 2012 letter which noted Plaintiff's complaints of numbness and weakness in the entire right side of his body and decreased reflexes (R. at 254),

- a September 27, 2011 letter which noted a frozen right shoulder (R. at 265), and

- a November 1, 2012 letter which noted Plaintiff's diabetes was not well controlled, there was decreased pinprick distally in his feet, reflexes were decreased, but no cranial nerve abnormalities (R. at 270).

(*See* DE 18 at 16, R. at 17, 19.) These were clearly taken into consideration.

With respect to obesity, the Commissioner points to the ALJ's Step 4 discussion of obesity. (DE 18 at 17, R. at 20.) There, among other things, the ALJ noted: "In spite of his weight, clinicians observed the claimant ambulate normally without an assistive device, and to retain functional range of motion." (R. at 20.) Although this paragraph of the ALJ's RFC determination does not expressly cite any records, the Commissioner refers to Robert Rubin, D.P.M.'s May 11, 2012 letter (R. at 236) and several of Andrew Marcus, M.D.'s letters (R. at 243, 254, 270) for support. (DE 18 at 17.) For example, Dr. Rubin noted that Plaintiff's range of motion was grossly within normal limits. (R. at 236.)

Thus, the ALJ adequately considered Plaintiff's right shoulder impingement, diabetic polyneuropathy and obesity in her decision. An argument that the ALJ should have incorporated each of the Step 2 severe impairments within the Step 4

26

RFC determination is unavailing. First, an ALJ is not required to incorporate all impairments deemed severe at step two into his or her hypothetical to the VE or the corresponding RFC. *Griffeth v Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). A step two finding of severity is merely a "*de minimis* hurdle," which "enable[s] the Commissioner to screen out 'totally groundless claims.'" *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Griffeth*, 217 F. App'x at 428 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). "A claimant's severe impairment may or may not affect his [or her] functional capacity to do work." *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2014 WL 1765480, at *5 (E.D. Mich. July 14, 2004). Even after determining that an impairment is severe at step two, the ALJ retains an obligation to "assess credibility and determine the facts" as to the claimant's physical and mental limitations. *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp. 2d 489, 497 (E.D. Mich. 2005).

### b.    Mental impairments

At Step II, the ALJ found that Plaintiff has the severe mental impairment of mood disorder. (R. at 15.) Referring to his application for SSI benefits, Plaintiff claims his mental impairments include depression and anxiety. (R. at 112-118, DE 15 at 8.) He also claims to suffer from bipolar disorder. (DE 15 at 9.) According

to Plaintiff, his bipolar disorder, major depression and anxiety are characterized by things such as severe memory loss, panic attacks, delusions, etc.  (DE 16 at 9.)

Plaintiff's argument that the ALJ's RFC determination did not accurately portray Plaintiff's mental impairments is unavailing.  (*See* DE 15 at 5, 15.)  For example, Plaintiff alleges that "Judge Xenos does not factor in her RFC determination her own previous conclusion that Plaintiff has . . . mood disorder." (DE 15 at 15.)  He also argues that the ALJ "ignored the medical evidence from the medical record which demonstrates numerous health problems from Plaintiff's numerous physical and mental severe impairments."  DE 15 at 13.

However, the ALJ placed the following limitations on Plaintiff's ability to do light work:  "simple, repetitive, self-paced, unskilled work that involves minimal changes in work setting, and only occasional contact with coworkers, supervisors and the general public."  (R. at 18.)  As Defendant asserts, these limitations account for Plaintiff's mental conditions.  (DE 18 at 16.)  Moreover, among other mental health records, the ALJ considered the June 13, 2012 psychiatric evaluation and mental status examination by psychiatrist Someswara N. Navuluri, M.D. (R. at 16, 218-219), which found that Plaintiff's "memory was intact," that his "Judgment was good" and which does not suggest an inability to work.

   **c. Light work, non-exertional limitations, and the burden of proof**

Plaintiff takes issue with the ALJ's conclusion that he can perform a full range of light work. For example, Plaintiff claims that "[t]here is not a scintilla of evidence to support her RFC assessment that Plaintiff would be capable of light work on a sustained basis." (DE 15 at 15.) Plaintiff also argues that "[t]here is not a scintilla of evidence to support his RFC assessment that Mr. Jones would be capable of work at the light exertional level including work that requires lifting up to 20 pounds, standing, and walking, on a sustained basis." At most, Plaintiff contends, the medical evidence points to a sedentary RFC, although he would arguably be found disabled under the GRIDS. (DE 15 at 16.)

Additionally, Plaintiff contends that the ALJ failed to adequately account for her non-exertional limitations, such as pain and medication side effects, in setting forth the RFC. *See* DE 15 at 8, 15. Without citation to the record, Plaintiff claims to have chronic pain syndrome, severe pain when walking due to his peripheral neuropathy in both feet, and severe side effects from medication, such as dizziness, drowsiness and fatigue. DE 15 at 9. Pointing out the ALJ's finding that Plaintiff has moderate deficiencies of concentration, persistence or pace in completing tasks in a timely manner (R. at 18), Plaintiff contends "[t]here was no evaluation by the ALJ as to whether the Plaintiff needed to lay down during unscheduled work breaks, would need to elevate his feet, or [as to] concentration problems related to

Plaintiff's severe fatigue, bipolar disorder, memory, and pain issues." (DE 15 at 15.)

As noted above, "the burden of proof lies with the claimant at steps one through four of the process, culminating with a claimant's proof that she cannot perform her past relevant work." *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). In the end, it is the claimant's burden to prove his or her RFC. *See* 20 C.F.R. § 416.912(a);[9] *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Plaintiff has not satisfied his burden to challenge the ALJ's Step 4 RFC finding. Even if, as Plaintiff contends, the ALJ never discusses medication side effects, fatigue, neuropathy and pain (*see* DE 15 at 11), Plaintiff has not shown this omission was harmful. *See Shinseki, Secretary of Veterans Affairs v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Plaintiff states his limitations and severe impairments are documented with medical evidence and records, yet Plaintiff does not provide express citations to such records. (*See* DE 15 at 15-16.). In fact, Plaintiff's only express citation to the medical record is his discussion of Dr. Costea's assessment. (*See*, *i.e.*, DE 15 at 11, R. at 181-183.) The

---

[9] "In general, you have to prove to us that you are blind or disabled." 20 C.F.R. 416.912(a).

inconsistencies of this assessment and the reasons for discounting it are discussed
in greater detail above.  The same is true of Plaintiff's statement that the ALJ
"slanted and even outright misstates the evidence in her decision[,]" as this
statement is not supported by any citation to the record.  *See* DE 15 at 14.

In sum, there is ample support for the ALJ's RFC determination, and
Plaintiff fails to meet his burden to show why a contrary determination should have
been made or would have led to a different outcome.

### 3.    The ALJ appropriately addressed Plaintiff's credibility.

Plaintiff contends that the ALJ does not reject Plaintiff's "severe complaints
in any satisfactory way[,] nor does she dispute the Plaintiff's complaints."  (DE 15
at 15.)   "The ALJ's assessment of credibility is entitled to great weight and
deference, since he [or she] had the opportunity to observe the witness's
demeanor."  *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008).
Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported
by substantial evidence."  *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.
1997).

The ALJ found that Plaintiff's statements concerning the intensity,
persistence and limiting effects of his symptoms were not entirely credible.  (R. at
19.)  As the Commissioner points out, the ALJ made several observations during

Step 2 and Step 4 which highlight inconsistencies or challenge Plaintiff's

credibility.  (DE 18 at 18-19.)  For example, the ALJ observed:

- August 19, 2011 progress notes from Professional Medical Center which appear to address decreased sensation in the feet and indicate that Plaintiff had no acute distress (NAD) obesity (R. at 16, 205)

- Frederick Carr, B.S., S.S.T.'s October 11, 2011 statement that, **"When asked about his mental health regimen the client stated it's going well," and, per Plaintiff, there have been "no issues with medication side effects or complication concerning his prescriptions."**  (R. at 16, 185)

- Robert Rubin, D.P.M.'s May 11, 2012 notes acknowledge Plaintiff's complaint of "right foot discomfort, which has been present for about a month[,]" but also state Plaintiff "does quite a bit of walking and biking." (R. at 17, 236)

- Plaintiff's May 11, 2012 foot x-rays did not reveal acute fracture or dislocation (R. at 17, 237, 238)

- Andrew Marcus, M.D.'s July 26, 2012 notes that Plaintiff complained of "numbness and weakness in the entire right side of his body[,]" but Plaintiff's August 6, 2012 brain MRI was normal (R. at 17, 254, 257)

"Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among the medical reports, claimant's testimony, and other

evidence."  *Walters,* 127 F.3d at 531.  Here, the ALJ did so.

## G.    Conclusion

In sum, from a review of the record as a whole, the Undersigned concludes

that substantial evidence supports the ALJ's decision denying benefits.

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for

summary judgment, **GRANT** Defendant's motion for summary judgment, and

**AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: November 23, 2015             s/ Anthony P. Patti
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on November 23, 2015, electronically and/or by U.S. Mail.

                                     s/Michael Williams
                                     Case Manager for the
                                     Honorable Anthony P. Patti