UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY JONES,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

Case No. 14-14213

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

**ORDER ADOPTING REPORT AND RECOMMENDATION [19], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15], AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]**

Plaintiff seeks judicial review of an Administrative Law Judge decision denying her application for disability benefits. On January 19, 2015, Plaintiff filed a Motion for Summary Judgment [Dkt. #15]. Defendant filed a Motion for Summary Judgment [18] on April 6, 2015. On November 23, 2015, the Magistrate Judge issued a Report and Recommendation (R&R) [19], recommending that the Court deny Plaintiff's motion and grant Defendant's. Plaintiff filed Objections [20] on November 26, 2015. Defendant filed a Response to Plaintiff's Objections [21] on December 9, 2015.

For the reasons stated below, the Court **ADOPTS** the R&R [19].  Plaintiff's Motion for Summary Judgment [15] is **DENIED**.  Defendant's Motion for Summary Judgment [18] is **GRANTED**.

## FACTUAL BACKGROUND

The R&R summarized the record as follows (footnotes omitted):

### A. Background

Plaintiff filed his application for SSI benefits on September 29, 2011, alleging that he has been disabled since August 1, 2010, at age 48. R. at 112-118. Plaintiff alleges disability as a result of high blood pressure, diabetes, emotional, bipolar syndrome, dysfunctional left arm, mental conditions and a heart condition. R. at 129-137. Plaintiff's application was denied on December 13, 2011. R. at 49-59, 60, 61-64.

Plaintiff sought a de novo hearing before an Administrative Law Judge ("ALJ"). R. at 67, 68-74. ALJ Oksana Xenos held a hearing on March 22, 2013, at which Plaintiff was represented by counsel and Vocational Expert (VE) Harry Cynowa testified. R. at 27-48. On May 24, 2013, ALJ Xenos determined that Plaintiff was not disabled within the meaning of the Social Security Act. R. at 10-25.

On July 22, 2013, Plaintiff requested review of the hearing decision. R. at 6, 7-9. On September 5, 2014, the Appeals Council denied Plaintiff's request for review. R. at 1-3. Thus, ALJ Xenos's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on November 2, 2014. DE 1.

### B. Plaintiff's Medical History

In this case, Plaintiff alleges that he has been disabled since August 1, 2010. See R. at 112-118. Plaintiff's medical records span the period from January 8, 2010 to February 9, 2013. R. at 178-276 (Exhibits 1F-9F).

#### 1. Physical History

On July 10, 2010, Plaintiff was examined by family practitioner George C. Costea, D.O. (R. at 181-183.) Although Dr. Costea indicated that there were some limitations on lifting/carrying,

standing/walking and sitting, and some limitations on use of extremities for repetitive action, he also indicated there were no physical limitations. (R. at 182.) Also, Dr. Costea assessed mental limitations in comprehension, memory, sustained concentration and social interaction. (R. at 183.)

Plaintiff was seen for an internal medicine evaluation on December 2, 2011. (R. at 210-216.) Internist Bina Shaw, M.D. concluded that Plaintiff "can work eight hours a day. The patient can sit, stand, walk, bend minimally and lift at least 10-15 pounds of weight without difficulty. He should avoid heights and machinery." R. at 212.

It appears that Plaintiff's primary physician(s) were located at Midwest Medical Center – Dearborn, where he treated for an extended period. (R. at 228-276 [Ex. 9F]). For example, Plaintiff was treated by Daoud Faraj, M.D. on May 2, 2012 (R. at 232-234), Robert Rubin, D.P.M. on May 11, 2012 (R. at 235-240), Andrew Marcus, M.D. on June 14, 2012 (R. at 243-244), Jose DeSousa, M.D. on June 28, 2012, who performed an electrodiagnostic evaluation (R. at 245-246), Dr. Faraj on July 20, 2012 (R. at 247-253), Dr. Marcus on July 26, 2012, who ordered a brain MRI (R. at 254-257), Dr. Faraj on August 29, 2012 (R. at 258-261), Dr. Marcus on September 20, 2012 (R. 262, 264), and Dr. Marcus on September 27, 2011 or 2012, who sent him for an orthopedic MRI which occurred on October 5, 2012 (R. at 265-266, 267-269). It appears that Plaintiff was a no show on October 15, 2012 and cancelled November 15, 2012. (R. at 269.) However, Plaintiff was treated by Dr. Marcus on November 1, 2012 (R. at 270-272) and by Dr. Faraj on January 29, 2013 (R. at 273-274). The detail of these records will be discussed, as necessary, below.

### 2. Psychiatric History

On April 27, 2011, Plaintiff underwent an annual psychiatric evaluation, which revealed major depressive disorder, recurrent, severe with psychotic features, as well as polysubstance dependence, which was in remission. At that time, Dr. John Head observed: "the patient demonstrated good grooming, timeliness, orientation times four, poor eye contact, normal speech, intact judgment, logical and coherent thought process, average intelligence, no obsessive or compulsive thought, no psychosis evidence, fair insight, . . . calm behavior with social smile, pleasant or happy interaction and euthymic mood. . . . The patient was receptive to advice." (R. at 203.) At the

conclusion of the examination, Plaintiff received prescriptions for Luvox and Geodon. (R. at 202-203.) A May 24, 2011 psycho-social assessment revealed the same major depressive disorder and polysubstance dependence diagnoses. (R. at 184.)

Plaintiff's August 24, 2011 Individualized Plan of Service (IPOS) listed goals included stabilizing physical health, applying for SDA benefits, applying for SSI benefits, understanding the impact of psychotropic medication, establishing and maintaining abstinence, while increasing knowledge of the disease and the process of recovery. (R. at 186-200.) A medical progress note of the same date indicated the same major depressive disorder and polysubstance diagnoses listed above and psychotropic medication prescriptions for Luvox and Geodon. (R. at 201.)

On November 15, 2011, in assessing Plaintiff's mental RFC, Dyan Hampton-Aytch, Ph.D. concluded that Plaintiff appeared capable of sustained work activity. (R. at 53-57.) Thereafter, on June 13, 2012, Plaintiff underwent a psychiatric evaluation and mental status examination by Someswara N. Navuluri, M.D., which revealed a diagnosis of depressive disorder. He was prescribed Lexapro, Klonopin and Seroquel. (R. at 218-219.)

### C. Hearing Testimony
#### 1. Plaintiff's Testimony

Plaintiff Terry Jones testified at the March 22, 2013 hearing. (R. at 34-44.) Plaintiff stated he is right-handed and weighs 260 pounds. (R. at 34.) He lives by himself. Plaintiff has a GED. (R. at 35.) He grocery shops about once per month and goes to church. He does not drive. (R. at 38.) He gets around with help from different people or by catching a bus. He does his own laundry. (R. at 39.) Plaintiff fixes his own meals, most of which are bologna sandwiches, and a typical day includes getting up, sitting around, drinking a cup of coffee and viewing television programs. (R. at 38.) He also reads, often from the Bible. (R. at 39.) He usually gets five hours of sleep at night and occasionally naps during the day. (R. at 41.) He takes Ibuprofen, high blood pressure medication, water pills and aspirin, and the side effects include constipation and insomnia. (R. at 44.)

At the time of the hearing, he was not working, having last worked in 2008 and 2009 part-time as a painter. (R. at 35-36.) Plaintiff stopped working, because "since then my health has deteriorated." (R. at 36.) Plaintiff testified that he has mental stress.

(R. at 36.) According to Plaintiff, he has been "trying to deal with society" since his release from incarceration. (R. at 37.) He has trouble remembering things. (R. at 41-42.) On a typical day, he is "stressed out." (R. at 42.) He explained that he does not have great family support. Although the welfare payments have been very helpful, the assistance he received for rent has expired, and he is "about to get put out." (R. at 42-43.) The building in which he stays has bed bugs, "which are eating me alive." (R. at 43.) When he calls to ask for things, no one wants to help him. (R. at 42.) Sometimes, he feels like giving up, and has made suicide attempts. (R. at 42-43.)

Plaintiff also testified about the effects of his physical limitations on his ability to work. (R. at 36.) Among other things, Plaintiff mentioned problems with his feet and numbness in his right side. (R. at 36-37.) He also had surgery on his left arm and experiences no feeling "up the left side." He does not really have a limit on how long he can sit in one spot. He can sometimes stand for at least 20 minutes. He is limited to walking "[a] block or so, two blocks." (R. at 40.) Sometimes, he can lift at least 20 pounds. Plaintiff also testified that his diabetes has been out of control. (R. at 41.) Additionally, Plaintiff testified that he was treated for the possibility of fluid on his heart. (R. at 44.) Plaintiff stated that, sometimes, it hurts to get up, to walk, to think; he just wants "to lie there and do nothing." (R. at 43.)

Plaintiff testified that he was connected with "MRS," which this Court assumes to be the Michigan Department of Health & Human Services (MDHHS) Michigan Rehabilitation Services, but also explained he is not currently doing anything to find a job. (R. at 40.)

### 2. Vocational Expert Testimony

VE Cynowa also testified. (R. at 44-48.) Upon examination by the ALJ, the VE stated that a person of Plaintiff's age, education and past work experience who was limited to unskilled, simple, repetitive, self-paced work with minimal changes in the work setting and only occasional contact with the general public, co-workers and supervisors would not be capable of performing his past work as a painter (semi-skilled, medium). (R. at 45.) However, such a person could perform unskilled work at the light exertional level, including a small products assembler, a hand packager and a visual inspector checker. (R. at 46.) Moreover, the VE testified that if there were

frequent episodes of pain and a combination of other impairments which resulted in the individual being off task up to 20 percent of the workday on a regular and continuing basis, there would be no competitive, fulltime employment. (R. at 46.)

### D. The Administrative Decision

ALJ Xenos rendered her decision on May 24, 2013. R. at 10-25. At Step 1, she found that Plaintiff has not engaged in substantial gainful activity since September 29, 2011, the date of his application. R. at 15.

At Step 2, the ALJ found that Plaintiff has the severe impairments of diabetes, diabetic polyneuropathy, mild to moderate right shoulder impingement, hypertension, obesity, and mood disorder. R. at 15-17.

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. R. at 17-18.

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations: simple, repetitive, self-paced, unskilled work that involves minimal changes in work setting, and only occasional contact with coworkers, supervisors and the general public. R. at 18-21. Moreover, the ALJ found that Plaintiff is unable to perform any past relevant work. R. at 21.

At Step 5, having considered Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. at 21-22.

## STANDARD OF REVIEW

The Court conducts de novo review of objections to a Magistrate Judge's Report and Recommendation on a dispositive motion. 28 U.S.C. § 636(b)(1)(c).

Judicial review of a decision by a Social Security ALJ "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Cole v. Astrue*, 661

F.3d 931, 937 (6th Cir. 2011) (internal quotation marks omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir. 2001) (internal quotation marks omitted).  A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if there is also substantial evidence to support the opposite conclusion.  *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).  On the other hand, the substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into account whatever in the record fairly detracts from its weight." *McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 869 (E.D. Mich. 2005) (quoting *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).  Further, "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (internal quotation marks and citations omitted).

## ANALYSIS

### I.  Weight Assigned to Dr. Costea's Opinion

Plaintiff objects to the Magistrate Judge's conclusion that the ALJ adequately explained the weight assigned to the opinion of Dr. Costea, a purported

treating source.[1]  Regulations require that an ALJ always give good reasons in her decision for the weight given to opinions from a claimant's treating source.  20 C.F.R. § 404.1527(d)(2).  The ALJ's discussion of treating source evidence "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).  Failure to meet this requirement requires remand unless the failure is harmless error.  *See id.* at 940.  The error is not harmless where it obstructs meaningful review of the ALJ's decision, even if substantial evidence supports the weight assigned.  *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 257 (6th Cir. 2015) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009)).

> Here, the ALJ discussed Dr. Costea's opinion as follows:
>
> The undersigned considered the July 2010 examination report and assessment of Dr. Coste[a] (Exhibit 2F).  The family physician checked blocks indicating the claimant could not lift even 10 pounds; could not stand and/or walk even 2 hours in an 8-hour workday; could not sit 6 hours in a work day; and could not use his upper limbs in a useful manner.  Such level of dysfunction is not borne out by the record, including the doctor's own clinical narrative.  Dr. Coste[a] also checked blocks indicating the claimant had unspecified limits

---

[1] Defendant has argued that Dr. Costea is not a treating source.  The R&R concluded, in a footnote, that Defendant's claim "seems to be true."  However, the R&R proceeded to review the ALJ's discussion of Dr. Costea's opinion as if it were the opinion of a treating source.  The Court will do the same.

> affiliated with concentration, comprehension and memory, though subsequent evaluations completed by mental health clinicians reflected this not to be true. Little weight is given to the opinions of Dr. Coste[a], because they are not well supported, and they are contradicted by other substantial evidence.

The Magistrate Judge concluded that the ALJ "adequately explained her consideration of Dr. Costea's opinion." The Magistrate Judge reasoned that (1) the ALJ noted the date of Dr. Costea's report, which slightly predates the alleged onset of Plaintiff's disability; (2) the ALJ noted that Dr. Costea's assessment of Plaintiff's limitations was inconsistent with other evidence, including Dr. Costea's own clinical narrative and subsequent mental health evaluations; (3) some of these inconsistencies, such as questionnaire responses indicating that Plaintiff has no physical limitations *and* has limitations on lifting/carrying, are sufficiently obvious to excuse the ALJ's failure to specifically identify them; and (4) Plaintiff has failed to meet his burden to identify conflicting evidence to show that the ALJ's conclusion was not supported by substantial evidence.

The Court adopts the Magistrate Judge's conclusion but rejects some elements of his reasoning. The ALJ did not state how or whether she considered the date of Dr. Costea's examination when evaluating the weight to assign to the doctor's opinion. Thus, the Court cannot conclude that the ALJ's mere mention of the date constituted part of the "good reasons" she provided for that weight. Additionally, in challenging the ALJ's explanation for the weight assigned to a

treating source opinion, Plaintiff did not bear the burden of identifying conflicting evidence that would preclude a conclusion that substantial evidence supported the weight assigned. Plaintiff could win remand by showing that the ALJ's failure to articulate her reasoning obstructed meaningful review. *Cox*, 615 F. App'x at 257 (citing *Blakley*, 581 F.3d at 409–10).

As shown by the R&R, however, the ALJ's discussion of Dr. Costea's opinion is sufficient to permit meaningful review. As the Magistrate Judge explained, some of the inconsistencies to which the ALJ alluded are obvious. Further, the ALJ devoted several paragraphs of her decision— situated between the ALJ's credibility finding and her discussion of Dr. Costea's opinion—to discussing why the medical evidence supported her RFC finding and did not support further limitations. In light of this discussion, it is no great mystery what the ALJ meant when saying that additional limitations identified by Dr. Costea were "not borne out by the record" and "not well supported."

In sum, even though the ALJ's reasons for assigning Dr. Costea's opinion little weight arguably lacked the level of explicit detail demanded by regulations, the error was harmless. Harmless error of this type does not warrant remand. *Cole*, 661 F.3d at 940.

## II. Omissions from Plaintiff's RFC

Plaintiff's second objection, presented in only four sentences, appears directed at the following portion of the Magistrate Judge's analysis:

> Plaintiff has not satisfied his burden to challenge the ALJ's Step 4 RFC finding. Even if, as Plaintiff contends, the ALJ never discusses medication side effects, fatigue, neuropathy and pain (*see* DE 15 at 11), Plaintiff has not shown this omission was harmful. *See Shinseki, Secretary of Veterans Affairs v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Plaintiff states his limitations and severe impairments are documented with medical evidence and records, yet Plaintiff does not provide express citation to such records. (*See* DE 15 at 15-16.). In fact, Plaintiff's only express citation to the medical record is his discussion of Dr. Costea's assessment. (*See, i.e.,* DE 15 at 11, R. at 181-183.)

Plaintiff argues that acceptance of the Magistrate Judge's "assertions" regarding his failure to demonstrate a harmful omission "would certainly mean that no claimant could ever be considered disabled." The Court does not understand this argument. The Magistrate Judge's analysis implies that a claimant could succeed in proving the alleged omissions harmful, and that Plaintiff himself may have succeeded if he had cited medical evidence. Aside from "incorporating" arguments raised in his Motion for Summary Judgment, Plaintiff does not explain why the Magistrate Judge should have found reversible error. The Court agrees with Defendant that Plaintiff has forfeited whatever argument he intended to present for failure to develop it. *See e.g., Hayward v. Cleveland Clinic Found.*,

759 F.3d 601, 618 n.9 (6th Cir. 2014) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). The Court further notes that the R&R reminded the parties that filing objections that fail to raise certain issues *with specificity* would result in a waiver of appeal rights regarding those issues. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991).

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Report and Recommendation [19] is **ADOPTED** and, except as otherwise noted, entered as the conclusions and findings of the Court. Plaintiff's Objections to the R&R [20] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [18] is **GRANTED**. Plaintiff's Motion for Summary Judgment [15] is **DENIED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: February 19, 2016     Senior United States District Judge